# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 06-944


STATE OF LOUISIANA

VERSUS

MITCHELL PAT MAYEUX


************
APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, DOCKET NO. 113442-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE


************
**SYLVIA R. COOKS**
**JUDGE**
************


Court composed of Sylvia R. Cooks, Marc T. Amy, and James T. Genovese, Judges.

**CONVICTION AFFIRMED;**
**SENTENCE VACATED AND**
**REMANDED FOR RE-SENTENCING.**

**Molly L. Balfour**
**Assistant Attorney General**
**Louisiana Department of Justice**
**P.O. Box 94005**
**Baton Rouge, Louisiana 70804-9005**
**(225) 326-6200**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**George Lewis Higgins**
**Higgins Law Offices**
**P.O. Box 3370**
**Pineville, Louisiana 71361-3370**
**(318) 473-4250**
**COUNSEL FOR APPELLANT:**
        **Mitchell Pat Mayeux**

**Angelo Piazza III**
**Angelo Piazza Law Office**
**P.O. Box 429**
**Marksville, Louisiana 71351-0429**
**(318) 253-6423**
**COUNSEL FOR APPELLANT:**
       **Mitchell Pat Mayeux**

**COOKS, Judge.**

## STATEMENT OF THE CASE

Mitchell Pat Mayeux, Sr. was convicted by a jury of forcible rape in violation of La.R.S. 14:42.1. Following the jury's verdict, the trial court ordered a pre-sentence investigation. On the date scheduled for sentencing, Defendant filed a Motion for New Trial and/or Arrest of Judgment. The motion was heard and denied. The Defendant was sentenced to serve thirty years at hard labor. He appeals, asserting several assignments of error:

> 1) The trial court committed reversible error when the jury convicted appellant of La.R.S. 14:42.1 contrary to law and evidence;
>
> 2) The trial court committed reversible error when it allowed other crimes evidence to be admitted into evidence;
>
> 3). The trial court committed reversible error when it allowed a *Brady* violation to stand;
>
> 4) The trial court committed reversible error when it allowed the prosecution to prejudice appellant's right to a fair trial;
>
> 5) The trial court committed reversible error when it denied a new trial based on the lack of candidness regarding the jury foreperson in violation of appellant's right to a fair trial;
>
> 6) The trial court erred when it sentenced appellant to an excessive sentence; and,
>
> 7) The trial court erred in failing to recuse itself.

For the reasons assigned below, we affirm the conviction, but vacate the Defendant's sentence and remand for re-sentencing.

## STATEMENT OF THE FACTS

The victim, M.R.[1], was the fourteen-year-old next door neighbor of the Defendant and often babysat for his young children. One night in the summer of

---

[1] In compliance with La.R.S. 46:1844 (W), the victim's initials will be used to protect her identity.

1999 , Defendant's daughter, two other girls, and the victim, M.R. had a sleep-over in Defendant's camper which was parked in the yard at his house. During the night, after the girls fell asleep, the Defendant entered the camper where the victim was sleeping, held the victim's hands over her head and had sexual intercourse with her.

### Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent which requires Defendant's sentence be vacated. The trial court imposed a sentence of thirty years at hard labor without specifying the number of years to be served without benefit of probation, parole, or suspension of sentence. The penalty provision for forcible rape requires at least two years of the sentence be imposed without benefit of probation, parole or suspension of sentence. La.R.S. 14:42.1. Although La.R.S. 15:301.1 normally obviates the need to correct a sentence when the trial court is silent as to the required term of parole ineligibility, in this case, the statute requires that "at least" two years be served without benefits and gives the trial court discretion as to the number of years imposed to be served without benefits. Accordingly, we vacate the Defendant's sentence and remand for re-sentencing. *See State v. Jones*, 02-1176 (La.App. 3 Cir. 2/5/03), 839 So.2d 439, *writ denied*, 03-886 (La. 11/7/03), 857 So.2d 516.

We note the minutes of the jury's verdict contain an error. The minutes reflect the verdict was unanimous. However, the polling sheet indicates that the verdict was ten to two. We direct that the minutes be amended to correctly reflect the polling sheet.

2

*Assignment of Error # 1*

Defendant argues that the evidence presented at trial was insufficient to sustain the verdict of forcible rape beyond a reasonable doubt. He bases his argument on: 1) inconsistent statements made by the victim; 2) an assertion by one of the girls sleeping in the camper on the night of the alleged incident that it was the victim's boyfriend who came into the camper; and 3) the ulterior motives of the witnesses who testified that Defendant later bragged to them he had had sex with the victim.

In *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27, this court held:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See *King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

Louisiana Revised Statutes 14:42.1 defines forcible rape, in relevant part:

> A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

The victim, M.R., testified that she had lived next door to Defendant's family for two years prior to the incident. She had become a close friend of the family, visiting often, and would baby-sit Defendant's children on occasions when Amy

3

Mayeux, Defendant's wife, needed to run errands around town. M.R. also testified she was a friend of Defendant's oldest daughter.

M.R. testified that one night in 1999, toward the end of summer, she, Defendant's daughter, and two other girls had a sleep-over in a camper, which was parked in Defendant's yard. She described the camper as having two bedrooms, a kitchen/living room in between, and a bathroom next to the larger bedroom. She stated that she slept in the smaller bedroom, two of the girls slept in the living room area, and one girl slept in the larger bedroom. She stated that in the early morning hours, she woke up to find Defendant standing over her. He held her hands over her head with one hand and pinned her legs down with his legs. With his other hand he pulled her pajama bottoms off and penetrated her with his penis. She told him to stop, and if he did not, she told him she would tell his wife. Eventually, she wiggled a leg free and kneed him in the stomach and he got off her and left the camper.

M.R. testified that a few days later she told one of the girls, Tiffany Weaver, about the incident, but she did not tell anyone else. She testified the Defendant's wife confronted her about the incident and accused her of lying.

Four of Defendant's former co-workers testified at trial. Ronnie Knobles, his brother, Kevin Warren, Dennis Carmouche, and Bobby Scroggs. All four witnesses corroborate the testimony of the victim.

Ronnie Knobles stated that at the time of incident he worked for Defendant in his water tower painting business. He said that he knew the victim from spending time with Defendant at his home. One evening, on a job site, while he and other co-workers were preparing dinner, the Defendant bragged to them that he had finally had sex with M.R. Knobles testified the admission angered him because he knew the victim was only fourteen.

4

Kevin Warren corroborated Knobles's testimony regarding the Defendant's admission. He testified that he knew M.R. because she was a friend of his brother.

Dennis Carmouche testified that he had worked with Defendant for many years. He corroborated the testimony of Knobles and Warren, stating that "[h]e [Defendant] had his camper at his house or something. The kids [were] in there and he went and he picked her up and walked into another bedroom [sic]carried her in his arms. That he had sex with her. That's about it." He stated he did not know the girl was so young until Defendant and Knobles starting fighting about it. Carmouche testified that when he told his wife, she insisted that he quit working with Defendant. He said he quit a short time later, although Defendant told him he was fired.

Bobby Scroggs testified that he had worked with Defendant on and off for several years. He knew the victim because he had seen her at Defendant's house many times when he had visited. He testified the Defendant had spoken about the victim on several previous occasions. Scroggs testified the Defendant told him about the rape. Scroggs also testified Knobles was so angry when Defendant told them about the incident he threw an ashtray at Defendant. Scroggs also admitted he did not report the incident and that he "shame[d]. . . [himself] for not saying anything."

In brief to this court, Defendant argues that there was no physical evidence presented consistent with a rape allegation. However, Tracie Smith, an investigator with the Avoyelles Parish Sheriff's Office, testified that she did not attempt to collect physical evidence because of the three-year interval between the incident in the camper and when the allegation was made to the police in 2002.

Louisiana jurisprudence has consistently held that the testimony of the victim alone can be sufficient to establish the offense, even when there is no physical evidence. *State v. Schexnaider*, 03-144 (La.App. 3 Cir. 6/4/03), 852 So.2d 450; *State*

5

*v. Hotoph,* 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, *writ denied,* 99-3477 (La. 6/30/00), 765 So.2d 1062 and 765 So.2d 1066.

Defendant contends the victim made statements during her taped interview that were inconsistent with her trial testimony. The victim testified after Defendant left the trailer, she grabbed her panties and pajama bottoms and ran into the bathroom. At trial, she said she walked to the bathroom. Defendant argues that the victim could not remember if she ran or walked to the bathroom, or "whether the other girls in the camper were on the floor or on the couch in the room between the one she was in and the bathroom." He further points to the fact that in her initial report to the police, she said he raped her only once, but told a social worker that he raped her twice. Finally, Defendant argues that Tiffany Weaver's testimony established it was M.R.'s boyfriend who entered the camper on the night of the alleged offense and not Defendant.

Absent internal contradictions or irreconcilable conflicts with physical evidence, a witness's testimony may be sufficient to support a factual conclusion, and "[t]he fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient." *State v. Holley*, 01-254, p.6 (La.App. 3 Cir. 10/3/01), 799 So.2d 578, 583, quoting *State v. Bernard*, 98-994 (La.App. 3 Cir. 2/3/99), 734 So.2d 687, 691.

We find there were no internal contradictions or irreconcilable conflicts in the victim's testimony given at trial. While Tiffany Weaver testified a man woke her up and asked for the victim, she admitted she did not see his face, and had not told anyone about who she believed the man was until the trial. Further, the testimony of the four men who stated what Defendant had told them about his exploits with the

6

victim contained corroborative facts, tending to prove the victim was with his daughter and some other girls in a camper in his back yard when the offense occurred.

As for the testimony of the four men, Defendant argues in brief only that "[t]hese old employees have either married his wife or taken his business." Defendant did not testify at trial or present any witnesses on his behalf at trial. However, in his opening argument, during cross-examination, and during his closing argument, Defendant asserted that his wife, Amy Mayeux (who, after the allegations of sexual offenses surfaced, divorced him and later married a co-worker who did not testify at the trial) conspired with the victim, Defendant's former co-workers, and other members of her family to allege and prove that Defendant committed several sexual offenses in order to deprive him of any rights to his children and his business.

Finally, the jury heard the testimony of D.S.R., the daughter of Defendant's former wife and half sister to Defendant's oldest daughter. D.S.R. testified that in the summer of 2002, Defendant sexually assaulted her.[2] One of these offenses was witnessed by Jackie Suazo, Amy Mayeux's niece. Suazo testified that she and D.S.R. were visiting with Defendant's family in 2002. Suazo stated she had planned on spending the entire summer with her aunt. The second night after she arrived, she, D.S.R., and Defendant's daughter were sleeping in the living room when Defendant entered the room, and after turning on the TV and watching it for a while, pulled the covers off D.S.R. and performed oral sex on her. The next morning Suazo called her father and told him what she had seen. The following day, while Defendant was at work, Suazo's father came and took her home, along with Defendant's wife and children. It was from this incident that the current offense ultimately came to light.

_____

[2]While D.S.R. was not the victim in the current case, Defendant was charged with a sexual offense concerning the girl.

7

We find the testimony presented, viewed in a light most favorable to the prosecution, was sufficient to allow the jury to find beyond a reasonable doubt that Defendant committed forcible rape against M.R. She testified she was sleeping when the Defendant crept into the room and jumped on top of her. She awoke to find him sitting on her legs. He held her hands over her head and pinned her legs down with his legs. She struggled to free herself, cried and told him she would tell his wife if he did not stop. Her testimony was consistent both at trial and in her transcribed, taped interview with the police. Her trial testimony is as follows:

Q. In other words, were you agreeing to him doing that to you?

A. No.

Q. Were you trying to make him stop?

A. Yes. I told him to stop.

Q. Did he immediately stop when you first told him?

A. No.

Q. What did he do?

A. He just told me to be quiet. And then I was telling him like if you don't stop I'm going to tell Amy and he said no you're not going to tell her. And then after that I started moving my leg around just to get my leg out from underneath him and my knee hit him in the stomach so I just kneed that's when he got off of me and he had left.

In her transcribed, taped interview, she stated:

Q. Did you tell him to stop?

A. Yeah, I told him to stop about 5 or 6 times and he wouldn't. I was crying a lot and I wanted to. . .I just wanted to. . .I wanted to hurt him really bad. That. . .at that time. I wanted to wake up Shayne and them but I just. . . I couldn't.

. . . .

Q. Did you try calling the other girls that were in the camper to wake them up?

8

A. No, cause I. . . I had started crying when I. . . when I start crying, I can barely talk. I. . . I can't nothing to come out of me.

In *Schexnaider*, 852 So.2d 450, this court concluded that the evidence presented was sufficient to support a verdict of forcible rape when the victim had a reasonable belief that resistence was futile: the victim was young, the accused held her down with his larger body size and weight, and disregarded her pleas to stop. This court noted:

> [S]he did not recall Defendant hitting or slapping her and she did not recall hitting, scratching, kicking, or biting Defendant. She explained that when she get[s] frightened, she freezes. She testified: "I was scared and I couldn't move. I couldn't say anything." E.N. stated that she was finally able to tell Defendant "No," and when she told Defendant she was going to tell her friend Ryan, the Defendant stopped. E.N. also testified that there was really nothing she could do to get the Defendant off of her because from the time the incident started the Defendant had his weight on her. She further testified that there was no one around during or after the rape.

*Id*. at 454.

In *State v. Wilkinson*, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, *writ denied*, 00-3161 (La.10/12/01), 799 So.2d 494, the fifth circuit court affirmed findings of simple rape. In *Wilkinson*, although the jury found Wilkinson guilty of the responsive verdict of simple rape, the fifth court held that the evidence was sufficient to support the crime of forcible rape when the evidence established the accused pushed the fourteen-year-old victim to the ground and held her down with his body. She testified she was frightened. They were in a secluded area and the victim "could have reasonably believed that screaming would be futile." *Wilkinson,* 772 So.2d at 458.

We find sufficient evidence to support the jury's verdict. The victim testified she awoke to find the Defendant standing over her. He pinned her down on the bed with his legs and held her arms over her head. The victim's testimony was

9

corroborated by the testimony of several co-workers of the Defendant who testified the Defendant boasted about raping the victim. The jury heard the testimony of D.S.R., the victim's half sister who stated the Defendant sexually assaulted her. Accordingly, we find the evidence sufficient to support a conviction of forcible rape.

*Assignment of Error #2*

Defendant argues that the trial court erred when it allowed other crimes evidence to be submitted to the jury. The other crime was the sexual battery offense committed against D.S.R., offered through the testimony of the victim and the eyewitness as discussed above. Defendant argues that admission of the testimony was prohibited by La.Code Evid. art. 404(B)(1), which provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

In brief, Defendant argues that the crimes are dissimilar (forcible rape and sexual battery) and the introduction of the evidence of sexual battery would be unduly prejudicial. The State argued that La.Code Evid. art. 412.2 allows the introduction of other crimes evidence. A pre-trial hearing was held. At the hearing, Denise Maslin, a child abuse investigator with the Department of Social Services, testified that she became involved in the investigation in response to an eyewitness's observation of the alleged sexual battery committed against D.S.R. She contacted the family and interviewed D.S.R. who reported that she had heard of other victims. M.R. was one of the victims D.S.R. had heard about. Maslin learned of the current allegation of rape when she interviewed M.R.

10

D.S.R., who was fourteen at the time of the incident, also testified at the hearing. She stated that she was visiting her half-sister, Defendant's daughter, with Jackie Sauzo, in Defendant's home. She said that she and the two other girls were sleeping in the living room when Defendant came into the room, pulled her pajama bottoms down, and touched her on the genitals.

Following the hearing, the trial court ruled that based on La.Code Evid. art. 412.2, the testimony of the sexual battery was admissible for the reason it showed a lustful disposition toward young teenage girls and that the probative value of the evidence outweighed the prejudicial effect on Defendant's case.

Louisiana Code of Evidence Article 412.2(A) provides:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another sexual offense may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

Louisiana Code of Evidence Article 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of under delay, or waste of time.

In *State v. Patterson*, 05-560 (La.App. 5 Cir. 1/31/06), 922 So.2d 1195, the fifth circuit agreed that the use of other crimes evidence under Article 412.2, while prejudicial, was appropriate. In *Patterson,* the accused was charged with aggravated rape and evidence of a conviction for a simple rape was introduced. The fifth circuit stated:

> Turning to the present case, the incident involving T.K. is highly relevant to show the defendant's lustful disposition toward teenage girls. It also shows his propensity to sexually assault teenage girls while armed with a dangerous weapon while they are home with no other adult present. For the same reason that the evidence is probative, the evidence of the prior sexual conduct is prejudicial to defendant. *State v. Olivieri*,

[03-563 (La.App. 5 Cir. 10/28/03),] 860 So.2d [207] at 219. However, as observed by *Olivieri,* by enacting Article 412.2, the Louisiana Legislature evidently saw a need to lower the obstacles to admitting propensity evidence in sexual assault cases. *Id.* at 219. Considering the purpose behind Article 412.2, we fail to find that the evidence was so prejudicial so as to warrant its exclusion because there is no indication that the other crimes evidence confused or misled the jury, the evidence was presented in an orderly manner, with evidence of the prior sexual conduct being presented at the end of trial, clearly and succinctly through the testimony of the victim of that offense. Further, the trial court gave a limiting instruction on the other crimes evidence during the final jury charges. Thus, there was little chance the jury could confuse the facts of the two crimes.

*Id.* at 1204. *See also, State v. Zornes*, 34,070 (La. App. 2 Cir. 4/3/02), 814 So.2d 113, *writ denied,* 02-1280 (La. 11/27/02), 831 So.2d 269, wherein the accused was charged with aggravated rape and evidence of a similar crime was allowed to be introduced to show the occurrence of a crime through a common design. Moreover, as asserted by the State, the details of how the offense committed against M.R. came to light was necessary to the State's presentation of its case. In *State v. Willis*, 05-218, p. 26 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, 385, *writ denied,* 930 So.2d 973, this court stated:

> [t]he clear wording of the statute covers evidence of other sexual offenses and anything that forms an integral part of that act. Integral act evidence is evidence that is "related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." *State v. Colomb*, 98-2813, p. 3 (La. 10/1/99), 747 So.2d 1074, 1075 (quoting *State v. Brewington*, 601 So.2d 656, 657 (La. 1992)).

In the present case, the trial court specifically instructed the jury as follows:

> The evidence that alleges that the defendant was involved in the commission of a crime, wrong or act other than the offense for which he is on trial is to be consider[ed] only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show the defendant's lustful disposition toward and pre-interest[sic] in young early teen girls. Remember the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.

12

We find the trial court did not abuse its discretion when it permitted the introduction of the evidence of the sexual offense committed against D.S.R. The evidence was relevant to show Defendant's lustful disposition toward young teenage girls. While one incident involved rape and one incident involved oral sexual contact, in both cases, Defendant sought out fourteen-year-old girls, who were guests in his home, late at night after they fell asleep.

Lastly, the Defendant argues the notice provided by the State was inadequate in that it did not specify the exact date of the prior offense. The State filed the notice of intent to introduce other crimes evidence on January 5, 2006. Included in the notice was a statement by Jackie Sauzo who stated the incident of sexual battery she witnessed occurred in the summer of 2002. In *State v. Willis*, 915 So.2d 365, the notice provided by the State contained the name of the defendant's prior victim, the years in which the alleged acts occurred and the parish of the incidents. The defendant was also provided with information regarding the testimony of the witnesses. This court found the notice adequate and noted that the defendant could have interviewed the witnesses named in the notice.

In the present case, we do not find the Defendant was prejudiced by the notice filed by the State. He was provided with the name of the adverse witness and the time period of the prior offense. He could have interviewed the witness named in the notice and obtained the details of the alleged prior act. The evidence of a prior sexual battery was clearly admissible at trial. We find no merit in this assignment of error.

**Assignments of Error # 3 and 4**

In his third and fourth assignments of error, Defendant alleges that the trial court erred when it permitted a *Brady* violation to stand. Defendant asserts that State's "star witness was on probation and in violation of same. That provided him

13

motive to cooperate with law-enforcement which the appellant had a right to reveal to the jurors."

> The duty of a prosecutor to disclose exculpatory evidence is embedded in the principle that a criminal defendant is deprived of a fair trial when the state withholds exculpatory evidence that is material to guilt or punishment. The state's failure to disclose material evidence favorable to a criminal defendant implicates more than the defendant's discovery rights; the prosecutor has an affirmative duty to disclose such evidence under the Fourteenth Amendment's Due Process Clause. Failure to reveal this evidence implicates the defendant's right to a fair trial. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *State v. Marshall*, 94-0461 p. 12 (La.9/5/95), 660 So.2d 819, 825.

> . . . .

> Exculpatory evidence includes evidence which impeaches the testimony of a witness whose credibility or reliability may determine guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Additionally, *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985), reiterates the principle that there is no distinction between exculpatory evidence and impeachment evidence under *Brady*.

*In re Jordan,* 04-2397, pp. 9-11 (La. 6/29/05), 913 So.2d 775, 781-82.

On May 8, 2006, Defendant filed a "Motion for New Trial and/or Arrest of Judgment." The Defendant argued Bobby Scroggs, the State's "star witness" was not "completely candid" about his criminal background in that he failed to tell the jury he was on probation. At the hearing, held on the same date, Defendant advised the trial court that he had just learned of the probation and that the "State had the burden of ferreting out that information, providing that to the defense because it could be used as ammunition in the cross examination of their star witness."

The State responded as follows:

> It was my understanding the defense received rap sheets of the witnesses. He indicated that he didn't, however, let me remind the court that Mr. Scroggs took the witness stand. The defense asked him specifically did he have any convictions. The witness testified specifically he had a conviction for DWI which is born out by the rap sheet and that is his only conviction. And let me just say there was no,

14

to my knowledge, there was no questions ever asked of Defendant whether he was on supervision because of DWI. In fact I believe that the defendant could have only asked him do you have a conviction, what it was for. I don't think even if he wanted to he could of gotten into whether he was on supervision or not. I think. . . so with respect to any type of lack of candor on a part of the witness I would submit to the court that it is without merit. The witness honestly answered what he was convicted for, the rap sheet. . . the defense counselor now has a copy of born out that testimony in total.

Defendant offered the testimony of Norma Lemoine, who was the misdemeanor probation officer for the Twelfth Judicial District Court. She testified that Scroggs was convicted of operating a vehicle while intoxicated in 2004, second offense, and was currently on probation. She said that he had not completed the terms of his probation at the time of the hearing.

The trial court denied Defendant's motion for a new trial and ruled that Bobby Scroggs did not get any favorable treatment toward his operation of a vehicle while intoxicated offense in exchange for his testimony at trial.

The United States Supreme Court has determined that there are three components of a true *Brady* violation: The evidence must be favorable to the accused, either exculpatory or impeaching in nature; the evidence must have been suppressed by the State either willfully or inadvertently; and there must be prejudice. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936 (1999); *State v. Louviere*, 00-2085 (La. 9/4/02), 833 So.2d 885, *cert. denied*, 540 U.S. 828, 124 S.Ct. 56 (2003). Moreover, the evidence must be "material." Evidence is material only if it is reasonably probable that the result of the trial would have been different had the evidence been disclosed to Defendant. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985).

15

For the first prong of the test for a *Brady* violation, while Defendant asserts that Bobby Scroggs was in violation of his probation and therefore he could have received favorable treatment in exchange for his testimony, the fact that three other witnesses testified to the same set of facts indicates that Scroggs's possible probation violation was not evidence favorable to Defendant. Even had Defendant been able to impeach the witness, there was still the testimony of the three other men.

As for the second prong of the test, because apparently the conviction of one of the other witnesses was disclosed, it could be presumed the State inadvertently failed to disclose Scroggs' conviction.

Finally, three other witnesses testified to the same facts that Bobby Scroggs testified to, that Defendant bragged about his late night conquest of the fourteen-year-old victim, M.R. Defendant cross-examined all of the four men regarding their motives for testifying as they did. Defendant has not shown there was prejudice in that there was a reasonable probability that the result of the trial court would have been different had he known about the witness's conviction and possible probation violation.

We find the information of the witness's conviction and possible probation violation was not material, and the failure of the State to disclose this information did not have an effect on the outcome of the trial. Accordingly, there is no merit to these two assignments of error.

*Assignment of Error #5*

Defendant alleges that the trial court erred when it did not grant his motion for a new trial based on the fact the jury foreman failed to disclose a relationship with a member of the victim's family. In his motion for a new trial, Defendant asserted:

> Additionally, the foreman of the jury which convicted this defendant, misled the defense counsel about his knowledge of this case.

16

It is in fact alleged that the foreman of this jury has, both in the past and present, a close relationship to the victim's family. This relationship not only stems to friendship, but in-house visits and business relationships with the alleged victims[sic] family.

The transcript of the *voir dire* was not included with the record before this court. At the hearing on Defendant's motion for a new trial, Lawrence Sheppard testified that he was the foreman of the jury that convicted Defendant. The witness agreed that the night after the verdict was rendered, he rented a house to the brother of the victim's stepfather, a man named D. G. He further testified he knew many of the participants of the trial outside of the courtroom, including the defense attorneys because he owned a local bar and Defendant and several of Defendant's and the victim's family members patronized the bar on occasions. He stated that he had informed the trial court of this fact during *voir dire*.

Q. Well, how about the step-dad's brother, you know him?

A. Yes, sir.

Q. Tell the Judge how you know the step-dad's brother?

A. He recently rented a house from me.

Q. He rented a house during this trial from you, didn't he?

A. It was shortly after that I believe.

Q. You don't remember the exact dates?

A. I don't remember the exact dates.

Q. The night after this trial you met with him, didn't you? Think about it, you're under oath.

A. I may have. I may have met with [D.G.], yes.

Q. You're sure about that?

A. Right.

Q. The uncle of the victim?

17

A. Okay.

Q. Did you tell us about that? Did you tell us when I was asking you about relationships. . .

A. It was a man that was looking for a place to live and I offered my home to him.

Q. Did you tell us when we questioned you about what type of relationship you. . .

A. At that time he was not interested in the house.

Q. Well, what were you meeting with him the night that the trial ended on?

A. I don't remember what night I had met with him.

Q. It's your testimony under oath that you do not have an relationship with the step-uncle of the victim in this case until after this trial, is that your testimony?

A. You're asking if I had any relations with the people that was the witnesses or with Mitchell Mayeux.

Q. The question. . .

A. That was the question I remember in court.

. . . .

Q. But, so you think that perhaps you could have rented him property during this trial?

A. I may have, but I don't see what that's got to do with the witnesses.

Q. I understand that and I understand that, but I think the Judge's question was broader than our question when he asked you about knowledge of the [G.] family, etcetera.

A. No, he didn't ask me about knowledge of the [G.] family.

Q. And we're going to get a transcript.

A. He asked me if I knew any of the witnesses.

. . . .

18

Q. Sir, is it a fact that the Judge asked you did you know the persons on the witness list that was called out to you?

A. That's correct. The best I can remember that's what was asked of me.

Q. Did you know the witnesses, correct?

A. That's what was asked of me.

Q. And Mr. [D.G.] was not on the witness list?

A. No.

The trial court ruled:

With regard to Mr. Sheppard his involvement in the case I think he answered all the questions truthfully and honestly to the best of his ability and I (UNINTELLIGIBLE) earlier about the seven reasons of separation. I just believe in this parish you can always find that someone has an uncle or an aunt has contact with them and low and behold sometimes even a fiduciary relationship, whether it be a lease contract or bought a bicycle from them or it's just. . . everybody is connected to everybody and these issues are very similar. (UNINTELLIGIBLE) issues crop up all the time and issues of recusing the Judge because he went to a supper where so and so attended and things of that nature and it's impossible to. . . in voir dire nothing further was asked of Mr. Sheppard nor should anything have been apparently, but that would have been the opportunity. I think he answered truthfully and honestly and I think he followed his oath and there's nothing, nothing shown to me in the transcript or anything.

Before an accused can challenge a juror because of a connection or relationship between the juror and one of the participants of a trial, it must be shown that the relationship was such that would preclude the juror from arriving at a fair verdict. *State v. Wilson*, 01-625 (La.App. 3 Cir. 12/28/01), 806 So.2d 854, *writ denied,* 02-323 (La. 9/13/02), 827 So.2d 1121. *See also State v. Chapman*, 410 So.2d 689 (La.1981).

In *Wilson*, the appellant claimed the trial court erred when it refused to dismiss a juror who revealed that she knew the sister of one of the State's witnesses. In fact, the sister often stayed with the juror in her house. This court did not find error, citing *State v. Weaver*, 99-2177, pp. 6-7 (La.App. 4 Cir. 12/6/00), 775 So.2d 613, 618, *writ*

*denied,* 01-70 (La. 6/27/03), 847 So.2d 1255, which in turn cited *State v. Holland*, 544 So.2d 461 (La.App. 2 Cir. 1989), *writ denied*, 567 So.2d 93 (La.1990), as follows:

> A trial judge is granted great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed without a showing of an abuse of that discretion. *State v. Jones*, 474 So.2d 919 (La.1985). Disclosure during the trial that a juror knows or is related to a witness or the victim is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. *State v. Peterson,* 446 So.2d 815 (La.App. 2d Cir.1984). The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict. *State v. Hodgeson*, 305 So.2d 421 (La.1974).

*Wilson*, 806 So.2d at 862.

In the current case, the trial court asked Mr. Sheppard whether he ever discussed the case with D.G. He answered, "No." The trial court then asked if in anyway the rental agreement was tied into the case. Again, he answered, "No."

We find the trial court did not abuse its discretion when it deemed the juror was forthcoming with his disclosure at trial. The Defendant failed to show the jury foreman had a close personal and business relationship with the victim's family as claimed, or that the connection between the juror and the victim's step-uncle was such that would have influenced the juror's decision as to Defendant's guilt or innocence. Accordingly, this assignment is without merit.

***Assignment of Error # 6***

Defendant was convicted of one count of forcible rape, a violation of La.R.S. 14:42.1, which provides for a range of imprisonment of no less than two years and no more than forty years at hard labor. Defendant asserts his sentence of thirty years, without diminution of sentence, was constitutionally excessive under the circumstances of his case. We need not reach the issue of excessiveness because we vacate the Defendant's sentence and remand for re-sentencing.

***Assignment of Error #7***

For his final assignment of error, Defendant asserts that the trial court erred when it did not recuse itself from the case. In brief, Defendant states:

> [T]he Honorable Mark A. Jeansonne, District Judge, presiding over this case, revealed to defense counsel that he had personal knowledge of another alleged victim of Defendant, Michel Pat Mayeaux[sic]. The trial court revealed that a female friend of his had confided in Judge Jeansonne, that she too had been a victim of Michel[sic] Pat Mayeaux[sic] when she was a young girl, but had never reported this to the police.

On the morning of October 24, 2005, Defendant made an oral motion to recuse Judge Jeansonne. A hearing was held before Judge Rae Swent. The motion was denied. Defendant asserts that Judge Jeansonne "should have been removed from this case to avoid any appearance of impropriety to Defendant, his family, and supporters of Defendant."

Louisiana Code of Criminal Procedure Article 671 provides:

> A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
>
> (1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
>
> (2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree;
>
> (3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
>
> (4) Is a witness in the cause;
>
> (5) Has performed a judicial act in the case in another court; or
>
> (6) Would be unable, for any other reason, to conduct a fair and impartial trial.

21

It is well-settled jurisprudence in Louisiana that a trial judge is presumed to be impartial. *State v. Spooner,* 550 So.2d 1289 (La.App. 1 Cir. 1989), *writ denied,* 566 So.2d 394 (La.1990); *Willis*, 915 So.2d 365. Of the grounds for recusation listed above, Article 671(A)(1) and (6) would be most appropriate to Defendant's claim. Accordingly, for an accused to be entitled to the recusation on the grounds of bias, prejudice, and personal interest, such bias, prejudice and personal interest must be of a substantial nature based on more than mere conclusory allegations. *Willis,* 915 So.2d 365. In *State v. Gatti,* 39,833 (La.App. 2 Cir. 10/13/05), 914 So.2d 74, *writ denied,* 05-2394 (La. 4/17/06), 926 So.2d 511, the second circuit held that simply because the trial judge disclosed that he was a friend of two of the victims was not sufficient in itself to require the recusal of the judge. The second circuit stated that the burden is on Defendant to dispel the presumption that the trial court is impartial, and there must be a substantial basis for the allegation. In the present case, a revelation by Judge Jeansonne that he knew someone who claimed to be a victim of Defendant, without more, is not sufficient to show prejudice or bias on his part. We find no merit to this argument.

**DECREE**

Based on the foregoing review of the record, we affirm the conviction of the Defendant. However, because the trial court failed to designate the number of years to be served without benefits, we vacate the sentence of the Defendant and remand for re-sentencing. We also order that the minutes be corrected to reflect that the jury's verdict was ten to two for conviction.

**CONVICTION AFFIRMED;**

**SENTENCE VACATED AND
REMANDED FOR RE-SENTENCING**

22