# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 16-335

STATE OF LOUISIANA

VERSUS

CHRISTOPHER LANCE WASHBURN

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 73837
HONORABLE JIMMY W. WILEY, DISTRICT JUDGE, PRO TEMPORE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and John E. Conery, Judges.

**CONVICTION AFFIRMED. SENTENCE VACATED. REMANDED FOR RESENTENCING.**


**Don M. Burkett**
**District Attorney**
**Post Office Box 1557**
**Many, LA 71449**
**(318) 256-6246**
**COUNSEL FOR APPELLEE:**
     State of Louisiana

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     Christopher Lance Washburn

**AMY, Judge.**

The State charged the defendant with molestation of a juvenile, relating to his stepdaughter's allegation of sexual abuse. In pre-trial proceedings, the trial court determined that it would allow other crimes evidence from the victim's sister, who also related allegations of sexual misconduct by the defendant. A jury found the defendant guilty as charged. The trial court sentenced the defendant to fifty-eight years at hard labor, with "at least" twenty-five of those years to be served without benefits. The trial court thereafter denied a motion to reconsider sentence. The defendant appeals. For the following reasons, we affirm the defendant's conviction, but vacate the defendant's sentence as indeterminate. We remand for resentencing.

## Factual and Procedural Background

On July 28, 2015, the State filed an amended bill of information charging the defendant, Christopher Lance Washburn, Sr., with molestation of a juvenile, a violation of La.R.S. 14:81.2. The bill was further amended to reflect that the alleged victim, S.L.S.,[1] was under the age of thirteen when the alleged molestation occurred. *See* La.R.S. 14:81.2(D)(1). The State filed a Notice of Intent to Use Evidence of Other Crimes pursuant to La.Code Evid. art. 404(B), stating that the purpose of said evidence was to "show defendant's intent to commit the offense in question as well as the fact that the charged offense is merely part of a system of crimes committed by this defendant." The "other crime" at issue was described as follows: "On or between December 2012 through July 2014, B.B., a juvenile female, and younger sister of the victim in this matter, did state that

---

[1] The initials of the victim and her sister are used in accordance with La.R.S. 46:1844(W).

CHRISTOPHER LANCE WASHBURN, either had or attempted to have sexual intercourse with her."

The trial court conducted a hearing regarding these allegations and issued a written order ruling the evidence to be admissible, stating that the evidence set forth at the hearing proved "by clear and convincing evidence" that the allegation regarding B.B. "may have occurred."[2] The court further explained: "The purported evidence involved the other step daughter ("B.B.") of the Defendant who lived and resided in the same household with the alleged victim ("S.L.") of the instant case. The evidence is relevant and the probative value outweighs its potential prejudicial value."

Thereafter, the matter proceeded to trial, with a jury finding the defendant guilty as charged. The trial court sentenced the defendant to fifty-eight years at hard labor, with "at least" twenty-five years to be served without the benefits of probation, parole, or suspension of sentence. The defendant subsequently filed a Motion to Reconsider Sentence, arguing that the length of his sentence is "harsh and excessive." After conducting a hearing, the trial court denied the motion in writing.

The defendant appeals, assigning as error that:

    I.    The trial court erred in admitting prejudicial other crimes evidence.

    II.    The trial court erred in allowing Joanna Pleasant to be qualified as an expert witness.

    III.    The trial court erred in allowing Michael Sweet to remain on the jury.

---

[2] We note that it was unnecessary for the trial court to use a "clear and convincing" standard, as only a preponderance of evidence is required. *State v. Carmouche*, 14-215 (La.App. 3 Cir. 7/30/14), 145 So.3d 1101, *writ denied*, 14-1819 (La. 4/2/15), 176 So.3d 1031.

IV.    The trial court erred in imposing an excessive sentence.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. On review, we find one error patent with respect to the imposed sentence.

With regard to the sentence for a conviction for molestation of a juvenile under the age of thirteen, La.R.S. 14:81.2(D)(1) requires the following:

> Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.

In the instant case, the trial court ordered the defendant to serve fifty-eight years at hard labor, with the additional requirement that the defendant shall serve "at least" twenty-five years of the sentence without the benefits of probation, parole, or suspension of sentence. By using the phrase "at least," the trial court failed to specify the point at which the defendant becomes eligible for benefits, rendering the sentence indeterminate under La.Code Crim.P. art. 879.[3] *See, e.g.,* *State v. Fruge*, 09-1131 (La.App. 3 Cir. 4/7/10), 34 So.3d 422, *writ denied*, 10-1054 (La. 11/24/10), 50 So.3d 828; *State v. Cedars*, 02-861 (La.App. 3 Cir. 12/11/02), 832 So.2d 1191; *State v. Burton*, 94-486 (La.App. 3 Cir. 11/9/94), 649 So.2d 694. Accordingly, we vacate the defendant's sentence below, and remand this matter for imposition of a determinate sentence.

---

[3] Article 879 provides: "If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence."

3

*Other Crimes Evidence*

In his first assignment of error, the defendant contends that the State erred in admitting evidence that the defendant committed sexual acts, including four separate instances of rape, against the victim's younger sister, B.B. In support of his argument, the defendant cites La.Code Evid. art. 404(B)(1), which states:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

The State responds by citing La.Code Evid. art. 412.2(A), entitled "Evidence of similar crimes, wrongs, or acts in sex offense cases[,]" and which provides:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

Louisiana Code of Evidence Article 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." A trial court's decision regarding the admissibility of evidence, including other crimes evidence under La.Code Evid. art. 412.2(A), is subject to an abuse of discretion standard on review. *State v. Wright*, 11-0141 (La. 12/6/11), 79 So.3d 309.

The defendant argues that the evidence regarding B.B. lacks probative value, stating that "[t]hese incidents were not necessary to prove motive, system, or intent, especially since aggravated rape is a general intent crime unlike molestation of a juvenile, which is a specific intent crime," and that molestation of a juvenile "does not necessarily involve intercourse." The defendant also maintains that the "only similarity" between the crimes against the victim and the alleged crimes against her sister "was the young age of the alleged victims."

However, in ruling on the admissibility of said evidence, the trial court noted that "[t]he purported evidence involved the other step daughter ("B.B.") of the Defendant who lived and resided in the same household with the alleged victim ("S.L.") of the instant case. This evidence is relevant and the probative value outweighs its potential prejudicial value." The trial court further stated that "the purpose of the other crimes evidence may show the Defendant's intent to commit the charged offense as a part of a system of crimes committed by the Defendant." After review, we find no abuse of discretion in that ruling.

In *Wright*, 79 So.3d 309, the defendant was charged with aggravated incest of his seventeen-year-old son and argued that evidence regarding the defendant's sexual acts against a fourteen-year-old girl was inadmissible because those acts were dissimilar to the crime for which he was charged.[4] The supreme court rejected that argument, however, explaining that:

> Further, in enacting Article 412.2, the Legislature did not see fit to impose a restriction requiring such evidence to meet a stringent similarity requirement for admissibility. We have previously examined the legislative history behind the Article in *State v.*

---

[4] At seventeen years old, the victim in *Wright* was not considered a child under La.Code Evid. art. 412.2(A), but as the supreme court points out, Article 412.2(A) also applies "[w]hen an accused is charged with a crime involving sexually assaultive behavior," regardless of the age of the victim.

> *Williams*, 02-1030 (La.10/15/02), 830 So.2d 984. In *Williams*, this Court noted the enactment of the Article was prompted primarily by two decisions of this Court, *State v. McArthur*, 97-2918 (La.10/20/98), 719 So.2d 1037, and *State v. Kennedy*, 00-1554 (La.4/3/01), 803 So.2d 916. Both cases involved prosecutions for aggravated rape in which the State sought to introduce evidence of other sexual offenses committed by the defendants pursuant to what the State labeled a "lustful disposition" exception to other crimes evidence. In both cases, this Court refused to recognize the so-called "lustful disposition" exception to Article 404's other crimes prohibition, but, in doing so, noted that the evidence sought to be introduced would be admissible if Louisiana had a rule similar to Federal Rule of Evidence 413. This Court stated "the enactment of Article 412.2 was apparently the legislature's response to this Court's statements in *McArthur* and *Kennedy* as the language of Article 412.2 closely follows that of Federal Rule of Evidence 413." *Williams*, 830 So.2d at 986. Thus, Article 412.2 was enacted to loosen restrictions on "other crimes" evidence, and to allow evidence of "lustful disposition" in cases involving sexual offenses.
>
> Based on the facts of this case, we find the trial court properly allowed evidence of BC's age to be admitted. The trial court is afforded great gatekeeping discretion in determining what evidence is deemed admissible. Here, the trial court evidently determined, after testimony was developed at trial and reconsidering its previous ruling, defendant's ephebophilic proclivities were substantially similar enough to be both relevant and not unduly prejudicial. We agree.
>
> Disregarding the difference in gender, we find the similarities between BK and BC were sufficiently probative to support the admission of evidence of BC's age under Article 412.2. The record evidence demonstrates defendant had a propensity for sexual activity with adolescents where he held a position of authority, and where the adolescent children were in his household.

*Id.* at 317. Additionally, in a case in which the defendant was charged with committing various sexual acts against his five-year-old daughter, a panel of this court upheld the trial court's admission of evidence regarding an incident in which the State's witness, an adult, testified regarding an incident in which she alleged the defendant "drove next to her as she was walking, initiated a sexually-suggestive conversation, and masturbated in her view." *State v. Carmouche*, 14-

6

215, p. 3 (La.App. 3 Cir. 7/30/14), 145 So.3d 1101, 1103, *writ denied*, 14-1819 (La. 4/2/15), 176 So.3d 1031.

Contrary to the defendant's assertion, the "other crimes" at issue in the instant case are similar to the crime for which the defendant was charged, arguably more so than the crimes at issue in *Wright* and *Carmouche*. Significantly, B.B. testified at trial that the defendant had improperly touched both her and the victim on multiple occasions. B.B. additionally explained that he had also touched her with his "private area[,]" and that he had "raped [her]" on four occasions.[5] The defendant was the stepfather of both the victim and B.B., and they were both female juveniles under the age of thirteen living in the same household as the defendant when the alleged acts occurred. We find these circumstances support a view that the evidence demonstrates a "propensity for sexual activity with adolescents where he held a position of authority, and where the adolescent children were in his household." *Wright*, 79 So.3d at 317-18. Thus, the trial court permissibly determined that the evidence had significant probative value.

We further find no merit in the defendant's argument that even if the evidence had probative value, it was outweighed by its prejudicial impact, as it "portrayed [the defendant] as a bad person" and "resulted in [the defendant] being tried for rape, a crime for which he was never charged, as well as molestation." The supreme court has explained the meaning of "prejudicial" within the context of the La.Code Evid. art. 403 balancing test as follows:

> Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree. *State v. Germain*, 433 So.2d 110, 118 (La.1983). As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when

---

[5] B.B. also testified regarding these acts at the hearing on the admissibility of this evidence.

7

it is unduly and unfairly prejudicial. *Id. See also Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997)("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").

*State v. Rose*, 06-402, p. 13 (La. 2/22/07), 949 So.2d 1236, 1244.

While the subject testimony obviously had the potential for a prejudicial impact, there is no indication that it was unduly and unfairly prejudicial as explained in *Rose*. Rather, that possibility is reflective of its probative nature. Finally, we note that a special instruction was provided to the jury as follows: "The accused is on trial only for the offense charged involving the alleged victim [S.L.S.]. You may not find him guilty because he may have committed another offense."

In sum, we find no abuse of discretion in the trial court's conclusion that evidence of the defendant's sexually assaultive behavior toward B.B. was admissible at trial. Rather, upon review of the ruling in light of La.Code Evid. art. 412.2(A), the evidence supports the view that it demonstrated "a lustful disposition toward children[.]"

*Qualification of Expert Witness*

In his second assignment of error, the defendant argues that the trial court erred in allowing witness Joanna Pleasant, who interviewed the victim shortly after the defendant's arrest, to testify as an expert in forensic child interviewing. Specifically, the defendant argues that Ms. Pleasant's background does not warrant an expert witness qualification, noting that she held a college degree in family and consumer sciences, with a focus on hospitality management, design, and housing.

8

Ms. Pleasant testified at trial that she is the director of the Child Advocacy Center at Project Celebration and that at the time of the trial, she had conducted over 120 interviews. She also testified that her formal education in forensic child interviewing consisted of a one-week "intense training" program at the National Children's Advocacy Center in Alabama in 2014, as well as an unspecified amount of advanced interview training. She further testified that she periodically gathers with other forensic interviewers from child advocacy centers throughout Louisiana to critique each other's recorded interviews, and that these gatherings are supervised by the Children's Advocacy Centers of Louisiana.

A trial court's determination regarding the qualification of an expert witness cannot be disturbed absent an abuse of discretion. *State v. Williams*, 13-497 (La.App. 3 Cir. 11/6/13), 124 So.3d 1236, *writ denied*, 13-2774 (La. 5/16/14), 139 So.3d 1024. According to La.Code Evid. art. 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1)　The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2)　The testimony is based on sufficient facts or data;
>
> (3)　The testimony is the product of reliable principles and methods; and
>
> (4)　The expert has reliably applied the principles and methods to the facts of the case.

In support of his argument, the defendant points to Ms. Pleasant's lack of formal education in psychology, particularly her lack of a Ph.D in child psychology. However, Ms. Pleasant testified that a Ph.D is not required to conduct

9

forensic interviews with children, and that she does not know of any forensic child interviewers in Louisiana who have a Ph.D. She further testified that forensic interviews are "not conducted the way that a psychologist would do an interview." Moreover, as the State points out, the subject of her testimony was not child psychology; rather, she testified regarding forensic child interviewing, specifically her process of interviewing the victim.

We note two cases in which the expert witness in question did not have extensive experience. In *State v. Mazique*, 09-845 (La.App. 5 Cir. 4/27/10), 40 So.3d 224, *writ denied*, 10-1198 (La. 12/17/10), 51 So.3d 19, the defendant argued that a computer forensic examiner who had found inappropriate photographs of a young girl on the defendant's cell phone should not have been qualified to testify as an expert witness, citing a lack of experience. The court ultimately upheld her qualification, stating:

> Here, Ms. Deville did not have extensive experience as a computer forensic examiner. At the time of trial in March 2009, she had been performing forensic examinations for approximately seven months and had worked on approximately seven cases. However, she did testify as to her knowledge, skill, and training in the field of forensic examination. Under these facts, we cannot find that the trial judge abused his discretion in qualifying Ms. Deville as an expert in that field and allowing her to testify regarding her forensic examination in this case. Further, even if the trial judge erred in this regard, the review standard for the erroneous admission of evidence is whether there is a reasonable possibility that the constitutional error complained of might have contributed to the defendant's conviction. The reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Factors to be considered include the importance of the evidence to the State's case, the presence or absence of additional corroboration of the evidence, and the overall strength of the State's case.
>
> In the present case, the victim and her mother provided overwhelming evidence to support the presence of the incriminating evidence on Mazique's cell phone and the incestuous acts he engaged in with the victim. The jury had ample reason to convict, even without Ms. Deville's testimony and report. Additionally, the

testimony of the victim and her mother was not dependent on the results of Ms. Deville's work.

*Id*. at 235 (footnotes omitted). Additionally, in *State v. Strother*, 43,363 (La.App. 2 Cir. 8/20/08), 990 So.2d 130, *writ denied*, 08-2289 (La. 5/15/09), 8 So.3d 580, the expert witness at issue was an information technology manager who testified as an expert in the field of voice enhancement, specifically regarding his enhancement of a voice recording of the defendant. The expert witness testified that at the time of trial, he had performed that type of enhancement more than ten but fewer than fifty times. Nonetheless, the court affirmed his qualification:

> In this case, the trial court did not err in accepting the witness as an expert for this purpose. Although the witness was essentially self-taught in this field, there is no evidence that the processing of audio through a computer for enhancement requires the witness to have additional special training to render the enhancement reliable. The substance of the conversation, not the process by which the recording was enhanced, was the relevant evidence, and the witness was qualified by experience to perform the enhancement; he was not being qualified to give an opinion about the science behind the process of enhancement where that science was the ultimate issue in the case. Finally, J.S.'s mother listened to the enhanced recording and pronounced it an accurate reproduction of the conversation she had with the defendant, so any error in the trial court's ruling was harmless beyond a reasonable doubt. This assignment of error is without merit.

*Id*. at 140.

In this case, the trial court was able to assess Ms. Pleasant's testimony regarding her experience in conducting interviews, as well as her explanation as to the pertinent training. Given that basis, and in light of La.Code Evid. art. 702 and pertinent jurisprudence, we find no abuse of discretion in the trial court's ruling.

Furthermore, even if qualification of the expert witness had been an abuse of discretion, any such error would have been harmless beyond a reasonable doubt. *See Strother*, 990 So.2d 130. Notably, the State provided evidence at trial that was

independent of Ms. Pleasant's testimony. In addition to the video recording of Ms. Pleasant's interview with S.L.S., which was played at trial and transcribed into the record, S.L.S. testified before the jury in person. She addressed not only the occurrence of the interview, but she offered testimony as to further allegations of improper touching by the defendant. B.B. also testified at trial, explaining that she witnessed the defendant inappropriately touching S.L.S., and further alleging her own abuse by the defendant, as discussed above. Additionally, S.L.S.'s pastor's wife, April Haggard, explained to the jury that she informed the police that S.L.S. had related allegations against the defendant to her. Thus, and even in the presence of an expert witness qualification error, which we do not find here, any such error would have been harmless.

The defendant also argues that Ms. Pleasant's testimony did not meet any of the standards regarding the admissibility of an expert witness's testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). At trial, however, the defendant only objected to Ms. Pleasant's qualification as an expert witness, not the reliability or admissibility of her testimony. Thus, the defendant is precluded from raising the latter issue on appeal. *See* La.Code Crim.P. art. 841(A). *See also State v. Torregano*, 03-1335 (La.App. 5 Cir. 5/11/04), 875 So.2d 842.[6]

For these reasons, we find that this assignment lacks merit.

---

[6] Similar to the defendant in the instant case, the defendant in *Torregano* had objected to the qualification of the expert witness at trial, but had failed to object on the basis of the admissibility or reliability of the witness's testimony under *Daubert*. Accordingly, the fifth circuit declined to execute a *Daubert* analysis and focused solely on whether the witness's qualification as an expert was an abuse of discretion based on the witness's qualifications, or lack thereof. *Torregano*, 875 So.2d 842.

*Failure to Remove Juror*

In his third assignment of error, the defendant argues that the trial court erred in allowing Michael Sweet to serve as a juror. During voir dire, Mr. Sweet admitted that a number of years before trial, he worked at the same company as a man bearing the same name as the victim's maternal grandfather, but was unsure if it was the same man. Defense counsel asked Mr. Sweet if he did things such as "go to dinner" or "squirrel hunt with him," which Mr. Sweet denied.

However, during the trial, the victim's mother, who is also the defendant's wife, testified in open court that when she was a teenager, she heard her father refer to Mr. Sweet as his "good buddy" several times, but that the last time she could recall her father speaking with Mr. Sweet was "probably over 10 years ago[.]"

The victim's grandfather then testified that while he had worked at the same company as Mr. Sweet, the extent of their socializing outside of work had been one deer hunting trip and a transaction in which Mr. Sweet sold him a boat. The victim's grandfather further stated that Mr. Sweet had left the company "10 years or so ago" and that he had not seen Mr. Sweet in the intervening years, save for a chance encounter at Walmart a couple of years ago. The trial court did not re-examine Mr. Sweet.

Upon hearing this testimony, the trial court allowed Mr. Sweet to remain on the jury, finding that "[s]imply working ten years ago as co-workers does not establish that you could reasonably conclude that he would be influenced in any way or prejudicial [sic]." The defendant argues that Mr. Sweet should have been removed from the jury "out of an abundance of caution," and the court's decision to allow Mr. Sweet to remain on the jury prejudiced the defendant.

On review, we are mindful that trial courts have wide discretion in determining whether to reject a juror for cause, and those determinations cannot be disturbed absent an abuse of discretion. *State v. Jones*, 474 So.2d 919 (La.1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906 (1986). In this instance, we find that the record supports the trial court's ruling. According to *State v. Holland*, 544 So.2d 461, 465 (La.App. 2 Cir. 1989), *writ denied*, 567 So.2d 93 (La.1990) (citations omitted):

> Disclosure during the trial that a juror knows or is related to a witness or the victim is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict.

In *State v. Wilson*, 01-625 (La.App. 3 Cir. 12/28/01), 806 So.2d 854, *writ denied*, 02-0323 (La. 9/13/02), 827 So.2d 1121, the defendant argued that the trial court erred in failing to dismiss a juror who knew the sister of a State witness. After being sworn in, the juror admitted that the witness's sister stayed at her house four or five days a week. However, citing to *Holland* and its progeny, the court found that the trial court had not erred in failing to dismiss the juror.

Additionally, in *State v. Mayeux*, 06-944 (La.App. 3 Cir. 1/10/07), 949 So.2d 520, the defendant argued that the trial court erred in denying his motion for a new trial, alleging that one of the jurors had failed to disclose that he had personal and business relationships with several of the trial participants. After the trial, the juror testified that he rented a house to D.G., the brother of the victim's stepfather, the night after the verdict was rendered, and that he had revealed during voir dire that he personally knew many of the trial participants. The juror also testified that he had never discussed the case with D.G. and that the rental agreement was unrelated to the case. The court found that the trial court had not abused its discretion,

stating that the defendant "failed to show the jury foreman had a close personal and business relationship with the victim's family as claimed, or that the connection between the juror and the victim's step-uncle was such that would have influenced the juror's decision as to Defendant's guilt or innocence." *Id*. at 534.

More recently, in *State v. Miller*, 10-237 (La.App. 3 Cir. 11/3/10), 49 So.3d 1028, *writ denied*, 10-2668 (La. 4/25/11), 62 So.3d 86, the defendant argued that the trial court erred by failing to remove a juror who knew the defendant's ex-wife, who was a State witness. The juror testified during voir dire that the defendant's ex-wife was her "step-grandson's new wife's sister," whom she had met the weekend prior to voir dire, and indicated that this relationship would not affect her ability to serve as a juror. *Id*. at 1035. The panel affirmed the trial court's decision, stating that the record did not reflect that the juror "had the kind of personal relationship with the witness that would influence her decision regarding the defendant's guilt or innocence." *Id*. at 1038-39 (citing *Mayeux*, 949 So.2d 520, and *Wilson*, 806 So.2d 854).

Given this jurisprudence, and based on the record before us, we find no abuse of discretion in the trial court's ruling. Rather, there is no indication that the previous work relationship between Mr. Sweet and the victim's grandfather would influence Mr. Sweet's decision as a juror. Accordingly, we find that this assignment of error lacks merit.

*Excessive Sentence*

In his fourth assignment of error, the defendant argues that the trial court erred by imposing an excessive sentence. However, the necessity of vacating the defendant's sentence, addressed above, renders this argument moot.

15

**DECREE**

For the foregoing reasons, the conviction of the defendant, Christopher Lance Washburn, Sr., is affirmed. However, the defendant's sentence is vacated as indeterminate. The matter is remanded to the trial court for resentencing of the defendant.

**CONVICTION AFFIRMED. SENTENCE VACATED. REMANDED FOR RESENTENCING.**