829 So.2d 405 (2002)
STATE of Louisiana,
v.
Elizabeth ZACHARY.
No. 2001-KK-3191.
Supreme Court of Louisiana.
October 25, 2002.
Richard P. Ieyoub, Attorney General, Scott M. Perrilloux, District Attorney, Julie E. Cullen, Baton Rouge, for Applicant.
Kevin P. Monahan, Baton Rouge, for Respondent.
*406 PER CURIAM.
The rulings below are reversed. We find that under State v. Shelton, 621 So.2d 769 (La.1993), the evidence presented by the State to prove defendant's no contest plea from the state of Florida was sufficient to invoke the enhanced sentencing provisions of La. R.S. 15:529.1.
Originally indicted in the July 9, 1993 first degree murder of George Taylor in Livingston Parish, defendant ultimately faced trial on the amended charge of obstruction of justice, in violation of La. R.S. 14:130.1.[1] Following the jury's guilty verdict, the State filed an habitual offender bill charging defendant as a second felony offender, based on her 1987 nolo contendere plea in Florida to attempted burglary. At the sentencing hearing, the State introduced evidence of defendant's predicate conviction, but had been unable to obtain a copy of the transcript of defendant's Florida plea colloquy. Defense counsel filed a motion to quash the habitual offender bill alleging that the Florida record was devoid of evidence that defendant knowingly and voluntarily waived her rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). After taking the matter under advisement, the trial court declined to sentence defendant pursuant to the provisions of La. R.S. 15:529.1, and, over the State's objection, imposed a sentence of 10 years imprisonment at hard labor, half of the minimum penalty the defendant would have faced if adjudicated and sentenced as a second offender under La. R.S. 15:529.1(A)(1)(a).
The State noticed its intent to seek writs and orally moved for reconsideration of sentence, which the trial court denied. Subsequently, the State obtained the Florida transcript from defendant's nolo contendere plea, and filed a motion to reopen the habitual offender hearing. The trial court denied the State's motion and the State sought writs. Thereafter, the trial court submitted written reasons, at the State's request, for its decision to refuse to sentence defendant under La. R.S. 15:529.1, which the State argues did not address deficiencies with the State's proof of defendant's predicate conviction, but instead reflected the judge's "personal dissatisfaction" with the facts of the original murder case against defendant and her codefendant.[2] The First Circuit granted the State's application and remanded the case to reopen the habitual offender proceedings to allow the State to introduce the Florida transcript. State v. Zachary, 00-0579 (La.App. 1 Cir. 4/24/00). On remand, the trial court held a hearing, and the State was permitted to introduce a certified copy of the Florida transcript. Following that hearing, the trial court took the matter under advisement and ultimately rendered an opinion in which he found the State's evidence "constitutionally insufficient to hold defendant a habitual offender." In finding the Florida transcript less than "perfect," the judge reasoned, in pertinent part:
The transcript shows the defendant was not informed of her right to trial, right to remain silent, or her right to confront her accusers. There was no *407 colloquy between the court and defendant concerning these rights. There was no knowing and intelligent waiver of these rights. The plea "form" cannot as a matter of law supply this deficiency. The two-page form is signed on only one page. There cannot be an "articulate waiver" of the three Boykin rights on an unsigned check-off sheet.
The trial judge found that in any event, the plea form did not clearly apprise the defendant that she was waiving her privilege against self-incrimination at trial as well as at the plea colloquy. See State v. Martin, 382 So.2d 933, 936 (La.1980) ("The record of the guilty plea proceeding shows that Martin waived his right to remain silent at that proceeding, but it does not show an intention to waive his right not to testify against himself at a trial."), overruled on other grounds, State v. Williams, 392 So.2d 448, 450 (La.1981). Accordingly, the court quashed the habitual offender bill against defendant, and the State sought writs. The First Circuit denied the State's writ, ruling that the State failed to satisfy its burden of proof under Shelton. See State v. Zachary, 01-2225 (La.App. 1 Cir. 11/5/01) (Fitzsimmons, J., concurs in the denial of the application).
Under the court's present jurisprudence, to use a prior guilty plea to enhance punishment under La. R.S. 15:529.1, the State need prove only the fact of conviction and that the defendant was represented by counsel (or waived counsel) at the time he entered his plea. Thereafter, the defendant bears the burden of proving a significant procedural defect in the proceedings. State v. Shelton, 621 So.2d 769, 779-80 (La.1993). Once a defendant makes an affirmative showing of an infringement of his rights or a procedural irregularity in plea transcript, the State must prove the constitutionality of the predicate pleas by producing a "perfect" transcript. If the State produces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. Id., 621 So.2d at 780.
In the instant case, the transcript from defendant's Florida nolo contendere plea is certainly less than perfect. Rather than outline defendant's specific Boykin rights, the Florida judge asked generally if defendant understood the rights which she was giving up by entering her plea, to which she responded affirmatively.[3] The defendant also confirmed she understood the nature of the charges she faced, that she had reviewed the plea form with her attorney, and that she entered her plea freely and voluntarily. That the colloquy did not recite defendant's panoply of rights does not, in itself, defeat the State's efforts to enhance defendant's sentence. The court must then weigh the remainder of *408 the State's evidence to see if the state has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. Shelton, 621 So.2d at 780.
Turning to the remainder of the State's proof, at the sentencing hearing, the State introduced the Florida no contest plea form, signed by defendant and her counsel on October 2, 1987. The Florida plea form is a two-page document, in both English and Spanish, which bears defendant's name, her case number, and the specific charges to which she pleaded no contest. The form poses 12 queries, and offers the defendant "yes" and "no" check-off lines to respond. Included in the 12 inquiries are the Boykin rights, which are checked "yes" beside each right, signifying that she understood and waived the rights. Defendant and her counsel both signed the plea form at the bottom of the second page. The defendant affirmed under oath in open court during the subsequent plea colloquy that the signature on the form was hers and that it remained her choice to forego trial on a plea of no contest in return for sentencing concessions from the court, i.e., the withholding of an adjudication of guilt and imposition of a suspended 18-month sentence.
Louisiana recognizes a presumption of regularity in its judicial proceedings. La. R.S. 15:432; State v. Davis, 559 So.2d 114 (La.1990). Nothing presented here suggests that the state of Florida was operating under any lesser standard, or that a significant procedural defect tainted defendant's Florida proceeding, although it may have been preferable for the defendant to have initialed each right in the checkoff list as well as signing the document on the second page. Shelton, 621 So.2d at 777. In its entirety, the documentation supports the conclusion that defendant's 1987 nolo contendere plea was entered knowingly, intelligently, and with the benefit of counsel, as evidenced by reading the signed plea form in conjunction with the transcript from the plea colloquy. The defendant's contemporaneous assurances given under oath in open court that she had reviewed the form with counsel, understood the rights that she would waive by foregoing trial, and that she nevertheless persisted in her decision to enter a no contest plea constitute a "formidable barrier" to any subsequent collateral attack on the plea because "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). Moreover, in context, advice on the Florida waiver form to the defendant that by entering her pleas "you are giving up your right to remain silent, you are giving up your right to face the people who are accusing you of this crime and to cross-examine them [and] that you are giving up any defenses that you might have filed in this case," clearly referred to the rights the defendant had at trial if she persisted in her not guilty pleas.
Accordingly, the trial court in the present case erred in finding that the State had failed to carry its burden under Shelton of showing that the defendant had entered an informed and voluntary no contest plea in Florida to a crime that is the equivalent of a felony offense in Louisiana. The order quashing the habitual offender bill is therefore set aside and this case is remanded to the court of appeal for consideration of the issues pretermitted in its previous ruling.[4]
*409 DECISION OF THE FIRST CIRCUIT VACATED; CASE REMANDED TO THE FIRST CIRCUIT FOR CONSIDERATION OF PRETERMITTED ISSUES.
NOTES
[1] Co-defendant, Paul Weber, pled guilty to the reduced charge of manslaughter.
[2] The trial court jotted a terse response at the bottom of the State's request:

Written Reasons
This court is not going to sentence Elizabeth Zachary as a habitual offender to `make up' for the fact that the actual killer, Paul Weber, was allowed to plea[d] to a reduced charge before trial and before this court heard the evidence that established that Paul Weber was the actual killer. Two wrongs don't make a right.
[3] Specifically, the Florida judge asked defendant:

COURT: Have you had sufficient time to review and fill out the plea form with your attorney?
DEFENDANT: Yes, sir.
COURT: Do you understand the nature of the charges that you're pleading to here today and the possible sentences that can be imposed?
DEFENDANT: Yes, sir.
COURT: Do you understand all your rights that are outlined and contained on this form that you're entitled to and all the rights that you're giving up by entering this plea?
DEFENDANT: Yes, sir.
[4] Defendant also filed a motion to quash the habitual offender bill alleging that the assistant attorney general who filed the bill of information lacked constitutional authority to prosecute the case against defendant. The district court granted the motion to quash and the State applied for supervisory writs to the court of appeal. However, because the court of appeal found no error in the district court's conclusion that the State failed to satisfy its burden of proof under State v. Shelton, 621 So.2d 769 (La.1993), it pretermitted consideration of this ruling.