STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-765


STATE OF LOUISIANA

VERSUS

ALLEN JOSEPH MOREHEAD


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-2015-2972
HONORABLE E. DAVID DESHOTELS, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and D. Kent Savoie, Judges.


**AFFIRMED WITH INSTRUCTIONS.**

**H. Todd Nesom
District Attorney
Joe Green
Assistant District Attorney
John Richardson
Assistant District Attorney
Post Office Box 839
Oberlin, LA   70655
(337) 639-2641
COUNSEL FOR APPELLEE:
     State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**Post Office Box 2125**
**Lafayette, LA   70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Allen Joseph Morehead**

**Allen Joseph Morehead**
**Allen Correctional Center**
**3751 Lauderdale Woodyard Road**
**Kinder, LA   70648**
**IN PROPER PERSON**

**AMY, Judge.**

The State charged the defendant with illegal possession of stolen things over $1,500.00 after he was found to be in possession of two allegedly stolen all-terrain vehicles. A jury convicted the defendant as charged. The defendant was subsequently adjudicated a second felony offender due to a prior federal conviction. The trial court thereafter sentenced the defendant to nine years at hard labor. For the following reasons, we affirm with instructions.

**Factual and Procedural Background**

In the early morning hours of May 18, 2015, the Allen Parish Sheriff's Office received information regarding a suspicious truck leaving a home. The dispatcher informed Deputy Michael Dotson that the vehicle was travelling "at a high rate of speed" and that it had "a trailer that possibly had some four-wheelers on []it that may have been stolen." Deputy Dotson positioned himself along the highway, waiting for the truck to arrive at his location. He explained that after the described white truck approached him, he "r[a]n the truck down and made a traffic stop." Deputy Dotson explained that, after he removed the driver from the vehicle, he identified the driver as the defendant, Allen Joseph Morehead. The defendant's passenger was subsequently found to be Austin Brown.

Deputy Dotson testified that, when he questioned the defendant as to the ownership of the all-terrain vehicles (ATVs) on the trailer, the defendant explained that he had purchased the vehicles earlier in the day. However, the defendant could not produce related paperwork.

According to Deputy Scotty Paul, who also responded to the dispatch, the officers "started investigating the vehicle, the truck and the four-wheelers." He explained that the investigation included running "the VIN numbers on both the

four-wheelers and the trailer[,]"and that "they c[a]me back to different people that was in the truck [sic]." The ATVs were registered to Joshua LeBlanc, whereas the trailer was registered to Albert LeBlanc. Deputy Paul explained that the defendant and Mr. Brown were transported to the sheriff's office at that time.

On September 28, 2015, the State charged the defendant with illegal possession of stolen things over $1,500.00, a violation of La.R.S. 14:69(B)(1). After a jury convicted the defendant as charged, the State filed a bill of information, alleging the defendant to be a habitual offender, second offense. In the bill, the State noted both the subject conviction under La.R.S. 14:69(B)(1) and a purported April 2012 conviction in federal district court for one count of conspiracy to commit interstate transportation of stolen motor vehicles, a violation of 18 U.S.C. § 371. On March 30, 2016, the court adjudicated the defendant as a habitual offender and sentenced him to nine years at hard labor.

The trial court granted the defendant's motion for out of time appeal. Now appearing before the court, and in counseled assignments of error, the defendant alleges that:

I.      The State failed to sufficiently prove Allen Morehead was guilty of possessing stolen things over $1500.

II.     The trial court erred in finding Allen a second felony offender because the State failed to meet its burden of proof regarding any prior conviction.

III.    The trial court erred by denying counsel's motion to quash the jury venire when Allen Morehead was forced to sit in front of the jury pool all morning before trial, in plain view of potential jurors, some of whom noticed he was wearing prison attire. The court's ruling violated Allen's rights to be presumed innocent and to due process.

By supplemental brief filed in proper person, the defendant contends that "the comments of prosecution, infected and mislead [sic] the trial court and jury from

2

the 'bias[ed] statement' made by the prosecution, as an infringement of rights to due process[.]" The defendant also questions whether the presence of the trial judge's brother-in-law on the jury resulted in "unwarranted influence on deliberations."

## Discussion

*Errors Patent*

In addition to those errors assigned on appeal, La.Code Crim.P. art. 920(2) requires consideration of errors "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." Our review in that regard reveals one such error. Namely, at the July 7, 2016 hearing on the defendant's motion for retrial, the trial court advised him that: "you have two years that your date - - that your conviction becomes final to file post-conviction relief." The record indicates that the defendant thereafter filed an application for post-conviction relief on July 29, 2016.

Louisiana Code of Criminal Procedure Article 930.8 provides that the time period for applying for post-conviction relief is two years, beginning to run when a defendant's conviction *and sentence* become final under the provisions of La.Code Crim.P. arts. 914 or 922. Accordingly, the trial court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of the opinion and to file written proof in the record that the defendant received the notice. *See, e.g., State v. Thibodeaux*, 16-542 (La.App. 3 Cir. 3/15/17), 216 So.3d 73, *writ denied*, 17-0642 (La. 12/5/17), 231 So.3d 628.

3

*Sufficiency of the Evidence*

We first address the defendant's contention that the State failed to prove the value of the items at issue beyond a reasonable doubt. In particular, he contends that the State lacked sufficient evidence of the condition of the trailer and the subject ATVs so as to establish fair market value of $1,500.00 or more.

At the time of the May 2015 offense at issue, La.R.S.14:69[1] provided, in part:

> A. Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.

---

[1] Amended by 2017 La. Acts No. 281, § 1, La.R.S. 14:69 presently provides:

A. Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.

B. (1) Whoever commits the crime of illegal possession of stolen things, when the value of the things is twenty-five thousand dollars or more, shall be imprisoned at hard labor for not more than twenty years, or may be fined not more than fifty thousand dollars, or both.

(2) When the value of the stolen things is five thousand dollars or more, but less than a value of twenty-five thousand dollars, the offender shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than ten thousand dollars, or both.

(3) When the value of the stolen things is one thousand dollars or more, but less than a value of five thousand dollars, the offender shall be imprisoned, with or without hard labor, for not more than five years, or may be fined not more than three thousand dollars, or both.

(4) When the value of the stolen things is less than one thousand dollars, the offender shall be imprisoned for not more than six months or may be fined not more than one thousand dollars, or both. If the offender in such cases has been convicted of theft two or more times previously, upon any subsequent conviction, he shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.

B. (1) Whoever commits the crime of illegal possession of stolen things, when the value of the things is one thousand five hundred dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.

In *State v. Kelly*, 15-0484, pp. 3-4 (La. 6/29/16), 195 So.3d 449, 451, the Louisiana Supreme Court explained that:

In reviewing the sufficiency of the evidence to support a conviction, this court has recognized that an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). *State v. Tate*, 01-1658 (La.5/20/03), 851 So.2d 921, 928. Under this standard, an appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *Tate*, 851 So.2d at 928. In applying this standard, a reviewing court is not permitted to second guess the rational credibility determinations of the fact finder at trial, nor is a reviewing court required to consider the rationality of the thought processes employed by a particular fact finder in reaching a verdict. *State v. Marshall*, 04-3139 (La.11/29/06), 943 So.2d 362, 367. It is not the function of an appellate court to assess credibility or reweigh the evidence. *State v. Stowe*, 635 So.2d 168, 171 (La.1994).

While the defendant contends that the State failed to present sufficient evidence as to the condition and fair market value of the subject property, the record supports the defendant's conviction. As to condition, Joshua LeBlanc, the owner of the 2004 and 2006 Honda ATVs, explained that those vehicles were in "very good condition" at the time they were taken. Albert LeBlanc, the owner of the subject 1996 trailer, testified that the trailer was "[i]n fair condition." With regard to the value of the items, Officer Voorhies Leger explained that he acted as the chief investigator on the case and performed a valuation of the items in order to advise as to the appropriate charge. Officer Leger testified as to his methodology in arriving at the value of the items taken, noting that "low retail was above

5

$2,500.00" for the 2006 Honda and that "low retail" for the smaller, 2004 Honda "was just over $500.00." When asked by the State whether those figures collectively exceeded $1,500.00, Officer Leger responded: "Yes, sir, including the trailer. Well, just the 2006 would have been over $1,500.00." Additionally, the State presented exhibits, which the prosecutor described as "the reference that [Officer Leger] used was the NADA to determine the value of the 2006 Honda and also the 2004 Honda."[2]

Given this evidence regarding both the condition and the value of the vehicles, we find no merit in the defendant's contention that the State failed to prove that the stolen "things" were valued at $1,500.00 or more.

*Habitual Offender Status*

The defendant next questions the sufficiency of the evidence offered in support of his adjudication as a habitual offender. He notes that, at the habitual offender hearing, the State only presented the testimony of federal probation officer Clint Mitchell, who explained that he had been the probation officer for the defendant due to a prior guilty plea to a charge of conspiracy to commit interstate transportation of stolen motor vehicles. Notwithstanding this testimony, the defendant asserts that the State was required to prove the original guilty plea, that he was represented by counsel when he entered that prior plea, and that the plea was informed and voluntary. He cites *State v. Zachary*, 01-3191 (La. 10/25/02), 829 So.2d 405,[3] in this regard.

_____

[2] The documents, respective to each ATV, bear the title "NADAGuides Motorcycle Pricing[.]"

[3] In *Zachary*, 829 So.2d at 407, the supreme court explained that:

Under the court's present jurisprudence, to use a prior guilty plea to enhance punishment under La. R.S. 15:529.1, the State need prove only the fact of

6

After review, we find that the record before the court supports the defendant's adjudication as a second habitual offender. Notably, when defense counsel raised the evidentiary point at the habitual offender hearing at the close of the State's case, the following colloquy occurred:

MR. DEMORUELLE [Defense Counsel]:

> However, we would point out to the Court now that the State has rested, the bill of indictment has been recognized but has not been introduced into evidence. Therefore, we object to the multiple offender bill, number one. Number two, there is a Boykin form and there is no collogue [sic] between Mr. Morehead and the circuit judge and therefore this conviction cannot be used to enhance the conviction.

MR. SUMBLER [Assistant District Attorney]:

> And for the record, Your Honor, the State has already introduced into evidence already the State Exhibit-1[sic] which was actually the certified copy of the conviction prior to the actual trial in this particular case. And because of that, the State would introduce - It's already introduced into evidence already, so we don't have to introduce it again. So for the record, it's State Exhibit-1 and it has already been previously marked into evidence already and that's what the State used in reference to the habitual offender bill.

MR. DEMORUELLE:

> Your Honor, he offered it as to the trial as to the identification of Mr. Morehead and he used it under a [P]rieur purposes [sic]. For the purpose of habitual offender bill, it has to be re-introduced because Article 529 says that the State has to prove beyond a reasonable doubt that there is a prior conviction. And he has not done it in this hearing.

conviction and that the defendant was represented by counsel (or waived counsel) at the time he entered his plea. Thereafter, the defendant bears the burden of proving a significant procedural defect in the proceedings. *State v. Shelton,* 621 So.2d 769, 779-80 (La.1993). Once a defendant makes an affirmative showing of an infringement of his rights or a procedural irregularity in plea transcript, the State must prove the constitutionality of the predicate pleas by producing a "perfect" transcript. If the State produces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three *Boykin* rights. *Id.,* 621 So.2d at 780.

7

MR. SUMBLER:

> And, Your Honor, once again, it's already been introduced into evidence already.

THE COURT:

> Court finds that sufficient evidence has been introduced or produced to show a prior conviction.

MR. DEMORUELLE:

> Please note my objection.

As referenced in the above-passage, the State relied upon documentation of the underlying federal conviction by reference to State Exhibit-1, which it introduced into evidence at a pre-trial hearing conducted pursuant to *State v. Prieur*, 277 So.2d 126 (La.1973). That exhibit contained evidence of both the defendant's conviction and, by minutes of the proceeding, his representation by counsel. During Officer Mitchell's testimony regarding that conviction at the habitual offender hearing, the State noted that the documentation "ha[d] been previously marked as State Exhibit-1[,]" presenting that exhibit to the witness. In particular, the State asked Officer Mitchell to identify the defendant's indictment, contained within that exhibit, before he identified the defendant and confirmed that the indictment had the same number as the probation case file. Given the documentation's prior formal introduction of the evidence regarding the federal conviction and the State's reliance upon that evidence at the habitual offender hearing, we find that the trial court permissibly took notice of evidence introduced at that prior proceeding. *See State v. Muhammad*, 03-2991 (La. 5/25/04), 875 So.2d 45, 49 n.9 (wherein the supreme court explained within the habitual offender context that "the trial judge has the right to take judicial cognizance of any prior proceeding which is part of the same case he has previously tried."); *State v.*

8

*Brown*, 11-1656 (La. 2/10/12), 82 So.3d 1232; *State v. Timmons*, 44,702 (La.App. 2 Cir. 9/23/09), 22 So.3d 1074, *writ denied*, 09-2251 (La. 4/16/10), 31 So.3d 1053. *See also* La.Code Evid. art. 201.[4]

Furthermore, and to the extent the defendant contests the sufficiency of the evidence contained within State's Exhibit-1, we note that the defendant did not file written objections to the habitual offender allegations, as required by La.R.S. 15:529.1(D)(1):

> If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been

---

[4] Louisiana Code of Evidence Article 201, which addresses judicial notice of adjudicative facts, provides that:

> **A. Scope of Article.** This Article governs only judicial notice of adjudicative facts. An "adjudicative fact" is a fact normally determined by the trier of fact.
>
> **B. Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either:
>
> > (1) Generally known within the territorial jurisdiction of the trial court; or
> >
> > (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> **C. When discretionary.** A court may take judicial notice, whether requested or not.
>
> **D. When mandatory.** A court shall take judicial notice upon request if supplied with the information necessary for the court to determine that there is no reasonable dispute as to the fact.
>
> **E. Opportunity to be heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior opportunity to be heard, the request may be made after judicial notice has been taken.
>
> **F. Time of taking notice.** A party may request judicial notice at any stage of the proceeding but shall not do so in the hearing of a jury. Before taking judicial notice of a matter in its instructions to the jury, the court shall inform the parties before closing arguments begin.
>
> **G. Instructing jury.** In a civil case, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and he shall be given fifteen days to file particular objections to the information, as provided in Subparagraph (b) of this Paragraph. The judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies as set forth in the information.

(b) Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. *A person claiming that a conviction alleged in the information was obtained in violation of the constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information.* The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

(Emphasis added.) Thus, La.R.S. 15:529.1(D)(1)(b) required the defendant to "set forth his claim" as now alleged in his response to the habitual offender bill of information.

Neither do we find merit in the defendant's contention that La.R.S. 15:529.1(D)(1) requires a defendant only to complain of a defect in the bill. Rather, the plain language of the statute shows that such a response is required to preserve a claim that "a conviction alleged in the information" was obtained in violation of the state or federal constitutions. In *State v. Wise*, 13-247, pp. 7-8

(La.App. 5 Cir. 11/19/13), 128 So.3d 1220, 1225-26, *writ denied*, 14-0253 (La. 9/12/14), 147 So.3d 703, the fifth circuit explained:

> In his second *pro se* assignment of error, defendant argues the trial court erred in denying his Motion to Quash Multi-Bill in which he alleged that prosecutions for two of the alleged predicate offenses were not instituted in a timely manner. Specifically, defendant contends that the State exceeded the time limitation for screening and accepting the charges in predicate case numbers 288-157 and 358-790, now used by the State to charge defendant as a fourth felony offender. Thus, defendant maintains that these predicate offenses should have been quashed.
>
> A defendant has the right to challenge the constitutional sufficiency of previous convictions through a written response to the State's filing of a habitual offender bill of information. *See* La. R.S. 15:529.1(D)(1). A defendant must make such a response in order to preserve challenges to previous convictions for appellate review. *Id.*; *State v. Harris*, 44,402 (La.App. 2 Cir. 6/24/09), 20 So.3d 1121, *writ denied*, 09-2303 (La.4/23/10), 34 So.3d 271. In addition, if a defendant does not concede the validity of previous convictions, he is entitled to a formal hearing. La. R.S. 15:529.1D(1)(b). A defendant's response to the State's filing of a habitual offender bill of information is often styled as a "motion to quash." *See, e.g. State v. Zachary*, 08-634 (La.11/21/08), 995 So.2d 631. Pursuant to La. R.S. 15:529.1D(1)(a), a defendant is required to file particular objections to the bill within 15 days after the defendant denies the allegation of the information, refuses to answer, or remains silent.
>
> Here, defendant did not file his pro se motion to quash until a month after the habitual offender hearing and his adjudication as a fourth felony offender, and therefore the trial court did not err in denying defendant's motion to quash as untimely. *See Harris, supra*.

This assignment lacks merit.

*Motion to Quash – Jury Venire*

The defendant next questions the trial court's denial of his motion to quash the jury venire, an issue raised by defense counsel after the defendant sat before potential jurors in "prison attire." In that regard, the record contains the following colloquy:

MR. DEMORUELLE:

I was not here, Your Honor, when that jury was drawn. Mr. Morehead was not here when that jury was drawn.

THE COURT:

Yes, Mr. Morehead was.

MR. DEMORUELLE:

I'd like to make a motion to quash the entire jury venire as far as Mr. Morehead goes because he was in prison garb all morning long sitting here.

MR. SUMBLER:

First of all, for the record, he's not in prison garb now. Second for the record, when we first initially called the panel, we asked the - the judge asked the State who was going to go first and we said Allen Morehead. For the record, we took a break and that's when you had your client to come [sic] in and stated that he wanted to plead straight up. Then we took another break and that's when your client then decided to withdraw his plea. So we're back at square one. It was Allen Morehead initially. Allen Morehead is not prejudiced in this matter.

THE COURT:

All right. As far as the panel that's in the box at this time, the Court will acknowledge that we did call the case.

MR. DEMORUELLE:

Of Mr. Ngyuen.

THE COURT:

Of Mr. Ngyuen. However, all we did was impanel the jury and Mr. Morehead was here the entire time. Is that right?

MR. SUMBLER:

That's correct.

THE COURT:

All right. There's been no questions asked of the panel yet. Not one question. All we did was qualify the jury as to who

is statutorially [sic] ineligible and those guys were excused. We impaneled eighteen people who are sitting in the box at this time. Although, albeit, those eighteen were impaneled and the case of Kevin Ngyuen was called. But I cannot see any prejudice by having this jury hear this case of Mr. Morehead. There's no way, I think, any prejudice can be shown. So the Court will deny the motion to quash. Now with respect to the prison garb, what's your take on that, Mr. Sumbler?

MR. SUMBLER:

Initially Allen Morehead came - Initially Allen Morehead came into the courtroom with the prison garb on. However, since the break, we switched out and put a shirt on.

MR. DEMORUELLE:

Yeah, after these eighteen people in that box were seated, we took a break and he put a shirt on. He was here in front of the entire venire since 9:00 o'clock this morning.

MR. SUMBLER:

And also for the record, the actual prison garb that you're referring to had no markings on there and no identification on there or anything. It was basically scrubs.

MR. DEMORUELLE:

And he was sitting next to another person who had the identical clothing on.

MR. SUMBLER:

And also, Mr. Demoruelle did not make the objection then.

THE COURT:

That's what the Court is concerned about. Since 9:00 o'clock or at least by 10:00 o'clock. And right now it's almost 1:30. So it's been at least two or three hours that Mr. Morehead, the defendant, was sitting with his prison clothes. The Court does acknowledge that is was not like bright prison clothes with stripes or bright orange. It was a khaki color. It was khaki color identical to scrubs. And based on the fact - And also, the Court will advise the jury that a person who is in jail - and the Court always advises the jury that just because a person is under indictment and just because they are arrested, just because they

13

may be in jail at the time of the trial, is something that is not be considered as evidence of guilt. So Mr. Demoruelle's motion is denied.

Following review, we leave the trial court's denial of the motion to quash undisturbed. Significantly, this is not a case in which the defendant was compelled to stand trial in readily identifiable prison attire over his express objection. Such an occurrence "infringes upon his presumption of innocence and denies the defendant due process of law." *State v. Spellman*, 562 So.2d 455 (La.1990). The supreme court described such an occurrence as inherently prejudicial in nature which will be tolerated only where justified by an essential state interest that is specific to the subject trial. *Id.*

Instead, the trial court in this case considered exposure of potential jurors to the defendant's attire which occurred without prior objection by the defendant. In *State v. Ellis*, 487 So.2d 752 (La.App. 3 Cir.), *writs denied*, 492 So.2d 1216, 1217 (La.1986), a panel of this court considered a case involving jointly-tried defendants who alleged that they were denied a fair and impartial trial as a result of exposure to potential jurors, or jurors, while dressed in clothing provided by the detention facility. The panel rejected the defendants' claim, explaining that:

> The defendants contend they were denied a fair and impartial trial as a result of their exposure to the jury venire in the hall, and their presence in the courtroom while dressed in prison garb and handcuffed.
>
> It is alleged by the defendants specifically that they were brought through the courtroom halls in orange prison jumpsuits and shackled where jurors were probably present. It is further alleged that, while in the courtroom the defendants were dressed in khaki shirts and slacks provided by the sheriff's department (apparently regularly worn by prison trustees). There is no contention the defendants were ever handcuffed while in the courtroom, and only defendant Ellis entered the courtroom while dressed in the orange jumpsuit, and it appears that it was at his own request to look for his mother.

14

The defendants also assign as error the trial court's denial of the defendants' challenge for cause of juror Herbert Ryder, who indicated he had seen defendants in prison clothes and handcuffed in the hallway.

With the exception of the voir dire examination of prospective juror Ryder, nothing in the record shows any prejudice on the part of any other jurors resulting from any of them having possibly seen either of the defendants in prison garb. The examination of juror Ryder was done outside the presence of any of the other prospective jurors.

Upon examination of Herbert Ryder, the judge was satisfied that the juror was not biased as a result of having seen the defendants in prison garb and handcuffed, and denied a challenge for cause with respect to this juror. Specifically, Ryder stated he believed it was normal procedure for anyone coming to trial to be handcuffed and he would infer from that no guilt whatsoever. If a prospective juror is able to declare to the trial court's reasonable satisfaction that he could render an impartial verdict according to the law and evidence, a challenge for cause to that juror is properly denied. *State v. Claiborne*, 397 So.2d 486 (La.1981). The trial court is vested with broad discretion in rulings on challenges for cause, and such rulings will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Benoit*, 440 So.2d 129 (La.1983).

There is nothing in the record which shows that the use of the orange jumpsuits and/or handcuffs, while the defendants were being transported to the trial court, prejudicially affected the defendants or warrants overturning their conviction. *See State v. Rome*, 432 So.2d 207 (La.1983); *State v. Vizena*, 454 So.2d 1291 (La.App. 3rd Cir.1984).

Although not shown by the record, defendants allege, in briefs, that they were also dressed in khaki shirts and slacks issued by the parish prison for a short time in the courtroom while the selection of prospective jurors was being taken up by the court. First of all, it is not clear at all that such khaki attire is readily recognizable as prison garb, but even if it were, there is again no showing whatsoever that defendants were denied a right to an impartial trial.

Ordinarily a defendant before the court should not be shackled or garbed in any manner destructive of the presumption of innocence and of the dignity and impartiality of the judicial proceedings. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). But the mere fact that a defendant is so dressed before the jury does not, in and of itself, constitute a basis for reversal. The defendant must show, or the record must reflect, that he was prejudicially affected to the

extent that reversal is warranted. *State v. Clark*, 340 So.2d 208 (La.1976); *State v. Rome, supra*; *State v. Vizena, supra*. With the exception of juror Ryder, neither the defendants' briefs, nor the record, reflects which, if any, other jurors even saw the defendants before they changed into street clothes.

Accordingly, assignments of error 1, 2 and 4, with respect to the defendants wearing prison garb, are without merit.

*Id.* at 753-54.

As did the panel in *Ellis*, 487 So.2d 752, the trial court here considered the nature and appearance of the complained-of attire in rejecting the defendant's argument. Furthermore, it is unclear which venire members, if any, who may have ultimately sat on the jury, recognized or appreciated the origin of the defendant's clothes. For instance, the defendant notes that one potential juror recognized the clothing as prison garb,[5] however that juror was excused from service. Given these

---

[5] Earlier in the proceedings, and before the trial court ruled on the defendant's motion to quash, the following colloquy occurred:

THE BAILIFF:
      Ricky Johnson, number ninety-seven.

MR. JOHNSON:
      The defense attorney has already advised me he will not call me to a jury.

THE COURT:
      Okay. You do know that those two prisoners are in prison garb?

MR. JOHNSON:
      Yes, sir. Are they not supposed to be?

THE COURT:
      Please don't say anything. I'm not going to say anything unless the lawyer brings it up. That could cause a problem.

MR. JOHNSON:
      Okay.

THE COURT:
      Tomorrow or whenever. Or, let me tell you, I guess just be quiet about it and let the chips fall where they may.

MR. JOHNSON:
      About this?

factors collectively, and a lack of clarity in the record as to any prejudice resulting from the defendant's attire, we conclude that this assignment lacks merit.

*Statement by Prosecutor*

By supplemental brief filed in proper person, the defendant complains that the State referred to him as a "thief that keeps on stealing" before the jury. The record indicates that defense counsel objected after the State's reference in this regard, which was made during opening argument. During a bench conference, which is transcribed and included in the record, the State maintained that its reference was consistent with the trial court's ruling at the *Prieur* hearing. However, finding that the prior crimes evidence was admissible for limited purposes, the trial court advised the State not to continue with that line of reasoning and to remove a slide, which had been prepared by the prosecution as part of their presentation.

Recently, a panel of this court addressed an opening statement by the State in which the prosecutor included the remark, "[a]s humans evil is among us every day in a different shape[.]" *State v. Prince*, 16-260, p. 21 (La.App. 3 Cir. 2/1/17), 211 So.3d 481, 495, *writ denied*, 17-0410 (La. 11/28/17), 230 So.3d 222. As in the present case, the defendant in *Prince* objected immediately and renewed his objections after similar remarks occurred later in the opening. This court explained:

THE COURT:
    You're asking to be excused?

MR. JOHNSON:
    Yes, sir.

THE COURT:
    The Court will excuse you. Mr. Johnson is excused.

Later, Defendant renewed his objection and asked the trial court to instruct the jury to disregard the State's remarks. The trial court advised that it would consider giving an instruction to the jury to disregard the State's comments and to not consider sympathy and prejudice. During its closing instructions to the jury, the trial court instructed the jurors that opening statements and closing arguments were not to be considered as evidence and that they were not to be "influenced by sympathy, passion, prejudice, or public opinion." As Defendant notes, the State returned to the theme of "evil" in its closing argument. However, Defendant did not object at that point. Appellate counsel suggests an objection during closing argument would have been fruitless since the trial court had already denied Defendant's challenge to the "evil" line of argument.

. . . .

[T]he State . . . notes La.Code Crim.P. art. 771:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
>
> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

While Defendant objected to the remarks at issue, he did not request a mistrial. As mentioned earlier, Defendant renewed his objection after the opening. The trial court stated that it would advise the jury not to be moved by emotion and ultimately gave such an instruction. Thus, we find the dictates of La.Code Crim.P. art. 771 were satisfied.

We also find there is little likelihood the remarks influenced the jury and contributed to the verdict. Pursuant to *Williams*, we find that the possible influence of the remarks does not rise to the level of

thoroughly convincing this court that they improperly influenced the verdict. As discussed in the previous assignment of error, the core of the case was the credibility of Michael Hayes, whose testimony was corroborated by other evidence at trial and obviously believed by the jury. The State's appeal to the general idea of evil did not clearly have a bearing on the credibility issue. Also, a true contemplation of general evil might just as easily have led the jury to doubt Hayes. It is clear he is not a "model citizen," and the district court allowed Defendant to explore the issue of whether Hayes was merely trying to save his own neck at Defendant's expense.

For the reasons discussed, this assignment lacks merit.

*Id.* at 497-99. The court also noted that such remarks are subject to a harmless error analysis. *Id.*

As in *Prince*, 211 So.3d 481, the trial court instructed the jury that the attorneys' statements were not evidence and that the opening and closing statements were not evidence. It also instructed the jury that the "other crimes" evidence introduced at trial could be considered only for a limited purpose and that the defendant could not be found guilty of the instant offense simply because he may have committed another offense.[6] Given the measures taken by the trial court in response to the defendant's objection, it is unclear what influence the State's remark may have had on the jurors. Additionally, the State presented clear

---

[6] In this regard, the trial court instructed the jury that:

Statements made by the attorneys at the time during the trial are not evidence. In the opening statements the attorneys were permitted to tell you the facts which they expected to prove. In closing arguments the attorneys were permitted to present their contentions about what the evidence has shown or not shown and what conclusions they think should be drawn from the evidence. These opening statements and closing arguments are not evidence. . . . You have heard evidence of other prior crimes, wrong or acts attributed to the defendant for which he is not on trial. Evidence that the defendant was involved in the commission of offenses other than the offense for which he is on trial is to be considered only for limited purpose. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. The sole purpose for which such evidence may be considered is whether it tends to show proof of motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or accident concerning the present case. Remember the accused is only on trial for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.

evidence supporting the defendant's conviction. Accordingly, any error was harmless. *See Prince*, 211 So.3d 481.

*Jury Member*

In his final supplemental assignment of error, the defendant claims that the trial judge's brother-in-law was the jury foreman and that his presence during deliberations raises the possibility of an unwarranted influence on deliberations. The transcript of jury selection confirms that the trial judge's brother-in-law was in the jury venire and, in turn, on the jury.

We first point out that the defendant did not object to the trial judge's brother-in-law's presence on the jury. *See* La.Code Crim.P. art. 841(A) (providing that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence."). Furthermore, the defendant has not demonstrated any prejudice relating to such a relationship. In *State v. Washburn*, 16-335, pp. 13-15 (La.App. 3 Cir. 11/2/16), 206 So.3d 1143, 1151-53, *writ denied*, 16-2153 (La. 9/15/17), 225 So.3d 488, a panel of this court discussed a defendant's concern regarding relationships of jurors as follows:

> In his third assignment of error, the defendant argues that the trial court erred in allowing Michael Sweet to serve as a juror. During voir dire, Mr. Sweet admitted that a number of years before trial, he worked at the same company as a man bearing the same name as the victim's maternal grandfather, but was unsure if it was the same man. Defense counsel asked Mr. Sweet if he did things such as "go to dinner" or "squirrel hunt with him," which Mr. Sweet denied.
>
> However, during the trial, the victim's mother, who is also the defendant's wife, testified in open court that when she was a teenager, she heard her father refer to Mr. Sweet as his "good buddy" several times, but that the last time she could recall her father speaking with Mr. Sweet was "probably over 10 years ago[.]"
>
> The victim's grandfather then testified that while he had worked at the same company as Mr. Sweet, the extent of their socializing outside of work had been one deer hunting trip and a

20

transaction in which Mr. Sweet sold him a boat. The victim's grandfather further stated that Mr. Sweet had left the company "10 years or so ago" and that he had not seen Mr. Sweet in the intervening years, save for a chance encounter at Walmart a couple of years ago. The trial court did not reexamine Mr. Sweet.

Upon hearing this testimony, the trial court allowed Mr. Sweet to remain on the jury, finding that "[s]imply working ten years ago as co-workers does not establish that you could reasonably conclude that he would be influenced in any way or prejudicial [sic]." The defendant argues that Mr. Sweet should have been removed from the jury "out of an abundance of caution," and the court's decision to allow Mr. Sweet to remain on the jury prejudiced the defendant.

On review, we are mindful that trial courts have wide discretion in determining whether to reject a juror for cause, and those determinations cannot be disturbed absent an abuse of discretion. *State v. Jones*, 474 So.2d 919 (La.1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). In this instance, we find that the record supports the trial court's ruling. According to *State v. Holland*, 544 So.2d 461, 465 (La.App. 2 Cir. 1989), *writ denied*, 567 So.2d 93 (La.1990) (citations omitted):

> Disclosure during the trial that a juror knows or is related to a witness or the victim is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict.

In *State v. Wilson*, 01-625 (La.App. 3 Cir. 12/28/01), 806 So.2d 854, *writ denied*, 02-0323 (La. 9/13/02), 827 So.2d 1121, the defendant argued that the trial court erred in failing to dismiss a juror who knew the sister of a State witness. After being sworn in, the juror admitted that the witness's sister stayed at her house four or five days a week. However, citing to *Holland* and its progeny, the court found that the trial court had not erred in failing to dismiss the juror.

Additionally, in *State v. Mayeux*, 06-944 (La.App. 3 Cir. 1/10/07), 949 So.2d 520, the defendant argued that the trial court erred in denying his motion for a new trial, alleging that one of the jurors had failed to disclose that he had personal and business relationships with several of the trial participants. After the trial, the juror testified that he rented a house to D.G., the brother of the victim's stepfather, the night after the verdict was rendered, and that he had revealed during voir dire that he personally knew many of the trial participants. The juror also testified that he had never discussed the case with D.G. and that the rental agreement was unrelated to the case. The court

found that the trial court had not abused its discretion, stating that the defendant "failed to show the jury foreman had a close personal and business relationship with the victim's family as claimed, or that the connection between the juror and the victim's step-uncle was such that would have influenced the juror's decision as to Defendant's guilt or innocence." *Id.* at 534.

More recently, in *State v. Miller*, 10-237 (La.App. 3 Cir. 11/3/10), 49 So.3d 1028, *writ denied*, 10-2668 (La. 4/25/11), 62 So.3d 86, the defendant argued that the trial court erred by failing to remove a juror who knew the defendant's ex-wife, who was a State witness. The juror testified during voir dire that the defendant's ex-wife was her "step-grandson's new wife's sister," whom she had met the weekend prior to voir dire, and indicated that this relationship would not affect her ability to serve as a juror. *Id.* at 1035. The panel affirmed the trial court's decision, stating that the record did not reflect that the juror "had the kind of personal relationship with the witness that would influence her decision regarding the defendant's guilt or innocence." *Id.* at 1038-39 (citing *Mayeux*, 949 So.2d 520, and *Wilson*, 806 So.2d 854).

Given this jurisprudence, and based on the record before us, we find no abuse of discretion in the trial court's ruling. Rather, there is no indication that the previous work relationship between Mr. Sweet and the victim's grandfather would influence Mr. Sweet's decision as a juror. Accordingly, we find that this assignment of error lacks merit.

In consideration of the discussion in *Washburn*, 206 So.3d 1143, and in light of the circumstances of this case, we conclude that the defendant's assignment of error lacks merit. The defendant neither objected to the subject juror's service nor demonstrated how the juror's relationship to the judge—a neutral arbiter—would result in unwarranted influence.

**DECREE**

For the foregoing reasons, the conviction of the defendant, Allen Joseph Morehead, as well as the adjudication and sentence as a habitual offender is affirmed. The trial court is directed to inform the defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant

22

within ten days of the rendition of this opinion and to file written proof in the record that the defendant received the notice.

**AFFIRMED WITH INSTRUCTIONS.**